United States District Court
District of Massachusetts

```
_____  )
NORMA EZELL, LEONARD WHITLEY,      )
and ERICA BIDDINGS, on behalf of   )
themselves and all others          )
similarly situated,                )
                                   )   Civil Action No.
            Plaintiffs,            )   17-10007-NMG
                                   )
       v.                          )
                                   )
LEXINGTON INSURANCE COMPANY;       )
AMERICAN INTERNATIONAL GROUP,      )
INC.; AIG ASSURANCE COMPANY; AIG   )
PROPERTY CASUALTY COMPANY; AIG     )
SPECIALTY INSURANCE COMPANY;       )
AMERICAN GENERAL LIFE INSURANCE    )
COMPANY; NATIONAL UNION FIRE       )
INSURANCE COMPANY OF PITTSBURG,    )
P.A.; AGC LIFE INSURANCE           )
COMPANY; AMERICAN GENERAL          )
ANNUITY SERVICE CORPORATION; and   )
AIG DOMESTIC CLAIMS, INC.,         )
                                   )
            Defendants.            )
_____  )
```

**MEMORANDUM & ORDER**

GORTON, J.

    Plaintiffs Norma Ezell ("Ezell"), Leonard M. Whitley, Jr.

("Whitley") and Erica Biddings ("Biddings") (collectively

"plaintiffs") bring this putative class action against ten

insurance companies and subsidiaries (collectively "defendants")

alleging that certain commissions charged in connection with

annuity payments are unlawful.  Pending before this Court is

defendants' motion to dismiss.  For the reasons that follow, the

motion to dismiss will be allowed.

## I.   __Background__

Plaintiffs' putative class action arises from a number of structured settlements of personal injury, wrongful death and workers' compensation claims against non-parties insured by Lexington Insurance Company ("Lexington").  The structured settlements provided that the claimants would receive a portion of their settlement payments over time according to a fixed schedule (rather than in a lump sum).  The structured settlement portions of those settlements were ultimately funded through the purchase of annuities from a separate life insurance company. Plaintiffs allege that defendants fraudulently deducted 4% from the cash portion of the settlement that the settling parties had agreed would fund the annuity payments.

### A.   __The Parties__

#### 1. __Named Plaintiffs__

The putative class action is brought by three named plaintiffs, Norma Ezell, Leonard Whitley and Erica Biddings on behalf of themselves and similarly situated settling parties.

Plaintiffs Norma Ezell ("Ezell") and Leonard M. Whitley, Jr. ("Whitley") are both residents of Aberdeen, Mississippi. Ezell and Whitley entered into a settlement agreement in April, 2003 with Community Eldercare Services and CLC of West Point, LLC, to resolve wrongful death claims arising from the death of

their aunt, Odessa Ware.  Lexington was the insurer of the
nursing home.  Ezell and Whitely each brought claims
individually and in their capacity as heirs to the estate of
their aunt.  Ezell also sued as Administratrix of the estate.

Plaintiff Erica Biddings ("Biddings") resides in Southwest
Ranches, Florida.  In August, 2009, Biddings settled wrongful
death and personal injury claims brought individually and as a
personal representative of the estate of her husband, Roddy
Major, against Bull Motors LLC, doing business as Maroone Ford.
Lexington was the liability insurer of Maroone Ford and was
obligated to pay any claim made or judgment obtained against
them covered by its policy with Bull Motors.

### 2. Defendants

Plaintiffs name ten affiliated insurance companies in their
complaint: (1) Lexington, (2) American International Group, Inc.
("AIG Parent"), (3) AIG Assurance Company, (4) AIG Property
Casualty Company, (5) AIG Specialty Insurance Company, (6) AGL,
(7) National Union Fire Insurance Company of Pittsburgh, Pa.
("NUFIC"), (8) AGC Life Insurance Company, (9) American General
Annuity Services Corporation ("AGASC") and (10) AIG Domestic
Claims, Inc.

In their complaint, plaintiffs state that nine defendants
are subsidiaries of AIG Parent.  Throughout their complaint,
plaintiffs refer to defendants collectively as "AIG".  In their

motion to dismiss, defendants clarify the relationship of the
insurers.  They state that Lexington, AIG Assurance Company, AIG
Property Casualty Company, AIG Specialty Insurance Company and
AGASC are AIG's property and casualty ("P&C") insurance
companies.  Defendants contend that the complaint does not
allege that any of AIG's P&C companies, other than Lexington,
had any interaction with the defendants.  Defendants note that
AGL, AGC Life Insurance Company and AGASC are AIG's life
insurance companies.

### B.  Settlements

Ezell and Whitley settled claims against Community
Eldercare Services and CLC of West Point, which were insured by
Lexington, in April, 2003.  The terms of the settlement of Ezell
and Whitley included a lump sum payment and a payment of
$200,000 to be annuitized to provide periodic payments beginning
in June, 2003.  Under that payment structure, Ezell and Whitley
were each allocated one half of the $200,000, or $100,000.  The
annuity to fund future payments was issued by American General
Life Insurance Company ("AGL").

Ezell and Whitely allege they were unaware that the amount
listed in the settlement agreement, $200,000, included a
commission that would be paid by defendants to someone working
on behalf of defendants to settle the claim.  They contend that

-4-

defendants did not inform them that 4% of the annuity premium would be paid to an AIG Approved Broker, Jim Beatty.

Biddings entered into a settlement agreement in August, 2009, resolving wrongful death and personal injury claims against Bull Motors LLC, which was insured by Lexington. Like the settlement of Ezell and Whitley, Biddings's settlement agreement with Lexington provided for a cash payment and a set of periodic payments with a then "present value" of $1,642,000. Lexington funded three separate annuities issued by three life insurance companies who are unaffiliated with defendants and not named in this action: Allstate Life Insurance Company, Hartford Life Insurance Company and New York Life Insurance Company.

Biddings alleges that she was unaware that 4% of the $1,642,000 annuity premium would be paid to AIG Approved Broker Douglas "Chuck" Smith. The complaint states that Biddings did not know that the amount to be annuitized included a commission that would be paid to someone working on behalf of defendants to settle the claims brought against Lexington in its capacity as liability insurer to Bull Motors.

### C.    Procedural History

Plaintiffs commenced this action on January 3, 2017. On March 31, 2017, defendants jointly moved to dismiss the complaint in its entirety.

## II.  **Motion to Dismiss**

### A.  **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

### B.  **Application**

#### 1. Standing

As a preliminary matter, defendants assert that plaintiffs have failed to allege any ascertainable injury to establish standing, requiring dismissal of all of plaintiffs' claims. Defendants contend that plaintiffs have received all of the

payments that they are entitled to under the terms of their

settlement agreements.  Because plaintiffs have received

precisely what they bargained for, defendants maintain that the

plaintiffs have not alleged a cognizable injury.

Plaintiffs respond by clarifying their allegations that

Lexington did not annuitize the amounts which it was required to

annuitize under the terms of the settlement agreements.

Plaintiffs contend that only 96% of each settlement amount was

annuitized while a 4% commission was "secretly deducted" to pay

the broker.

To establish Article III standing, a plaintiff must show an

injury in fact that is "concrete, particularized, and actual or

imminent". Blum v. Holder, 744 F.3d 790, 796 (1st Cir. 2014)

(citing Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 148

(2010)).  The Supreme Court has emphasized that concreteness

requires that the alleged injury "actually exist" and amount to

more than an "abstract" injury. Spokeo, Inc. v. Robins, 136 S.

Ct. 1540, 1548 (2016).  Particularity, on the other hand,

reflects the notion that an injury "must affect the plaintiff in

a personal and individual way". Lujan v. Defenders of Wildlife,

504 U.S. 555, 560 n.1 (1992).

In their complaint, plaintiffs allege that defendants

failed to allocate the promised amount to the annuity premiums.

For each named plaintiff, the complaint states that defendants

> failed to direct towards the purchase of an annuity for
> [the named plaintiff] the full [dollar amount] that had
> been promised and agreed to.

Complaint at ¶¶ 48, 54, 61.  Plaintiffs go on to allege that
they were unaware that 4% of the annuity premium was to be paid
to the broker in the form of a commission.  Defendants respond
that plaintiffs fail to state a claim because they do not allege
that the full amount promised by Lexington was not annuitized.
To the contrary, plaintiffs' complaint states that 4% of the
"cash to be invested in the annuity" was diverted to pay for the
broker fees. ¶ 64(d).

Defendants liken this case to Abdullah ex rel. Abdullah v.
Travelers Property Casualty Corp., 83 F. Supp. 2d 289, 291 (D.
Conn. 1999), where the district court held that plaintiffs
failed to state a cognizable injury in a case where plaintiffs
challenged a commission and rebate scheme related to annuities
purchased to fund structured settlements.  The plaintiffs
claimed that the broker took a commission from the annuity
transaction and proceeded to reimburse 75% of that commission to
the settling insurer in the form of a rebate.  In that case, the
plaintiffs failed to allege that their

> settlements suffered . . . or that the value of the annuity
> was something other than represented.

Id.  In a later case in the same district, however, that
district court denied a motion to dismiss where the plaintiffs

-8-

did allege, as plaintiffs do here, that the defendant insurance
company deducted 4% from the amount they promised to pay to
purchase the annuity in the structured settlement. Spencer, et
al. v. The Hartford Fin. Servs. Grp., Inc., No. 05-cv-1681 (D.
Conn. Oct. 24, 2006).

Plaintiffs here allege that they were injured by
defendants' failure to annuitize the amount agreed upon in the
terms of the settlement.  In their reply memorandum, defendants
suggest that plaintiffs' complaint cannot be read to allege that
the annuity was not fully funded.  Plaintiffs' complaint,
however, maintains that defendants failed to do exactly that.
Accordingly, plaintiffs have alleged a cognizable injury
sufficient to give them standing.

### 2. Contractual Release

Defendants also aver that plaintiffs' claims are barred by
the terms of their original settlement agreements.  They contend
that the general releases of any claims against Lexington or its
affiliates, together with the merger clauses in the agreements,
preclude plaintiffs from now claiming that they are entitled to
any payment not provided for in the contract.  Plaintiffs
respond that their claims are not barred under state law because
the contractual release language does not apply to a subsequent
fraudulent inducement or concealment claim.

It is undisputed that Mississippi law applies to the settlement agreements of Ezell and Whitley and Florida law governs Biddings's settlement agreement.

Under Mississippi law, a settlement agreement is treated as a contract and the court, when interpreting that contract, determines first whether the contract is ambiguous as a matter of law. Brady v. Travelers Indem. Co., No. 12-cv-245, 2014 WL 791547, at *3 (S.D. Miss. Feb. 25, 2014). In Bogy v. Ford Motor Co., the district court considered contractual release language similar to the language in the settlement agreements at hand and found that it was ambiguous. 824 F. Supp. 2d 733, 739 (S.D. Miss. 2011). Because the release language was ambiguous, the court held that it could not

> conclude, as a matter of law, that the fraudulent inducement claim in [the suit] was barred by the express terms of the cited provision.

Id. Accordingly, Ezell and Whitley are not barred by the general release in the settlement agreement from bringing their fraud, civil RICO or unjust enrichment claims.

Biddings's settlement is governed by Florida law. Under Florida law, a general contractual release does not bar a fraud claim where an agreement is procured by fraud or misrepresentation unless the contract explicitly states that it is "incontestable on the ground of fraud". Global Quest LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1027-28 (11th Cir. 2017)

-10-

(citing Oceanic Villas, Inc. v. Godson, 4 So.2d 689, 690-91
(Fla. 1941)) (considering defendants' reliance on "as is" and
"entire agreement" clauses).  Biddings alleges that her decision
to enter into the settlement agreement was induced by a
fraudulent misrepresentation in the form of "a promise of future
payments having a specified cost or present value".  Her claims
are not barred by the terms of the settlement agreement under
Florida law.

### 3. Civil RICO

Count I of plaintiffs' complaint alleges that defendants,
together with the brokers participating in AIG's "Approved
Broker" program, formed an association-in-fact for the purpose
of conducting structured settlement transactions.  Plaintiffs
state that defendants engaged in more than two acts of mail and
wire fraud which serve as predicate offenses under the RICO
statute.  They contend that defendants knowingly and
intentionally participated in misrepresenting the present value
of the settlement or the cost of the annuities by concealing the
4% commission.

Defendants respond that plaintiffs have failed to plead a
viable RICO claim.  They assert that plaintiffs 1) have not
alleged an adequate RICO enterprise distinct from the defendants
and established for a common purpose 2) have failed to allege

-11-

predicate acts with particularity and 3) have not adequately
pled reliance.

To state a RICO claim under 18 U.S.C. § 1961, a plaintiff
must allege four elements: "(1) conduct, (2) of an enterprise,
(3) through a pattern, (4) of racketeering activity". Giuliano
v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005) (internal citations
omitted).  Section 1961(1) defines racketeering activity to mean
"any act that violates one of the federal laws specified in the
RICO statute", including the mail and wire fraud statutes, 18
U.S.C. §§ 1341 and 1343, over a ten year period. Id.  The
Supreme Court has made clear that an "enterprise includes any
union or group of individuals associated in fact" and that RICO
extends to "a group of persons associated together for a common
purpose of engaging in a course of conduct". Boyle v. United
States, 556 U.S. 938, 944-45 (2009) (citing United States v.
Turkette, 452 U.S. 576, 580, 583 (1981)).

The plaintiffs fail to plead adequately that the defendants
and non-party brokers associated together for a common illegal
purpose as opposed to merely conducting their business in
parallel. Id. at 946.  The complaint alleges that defendants
maintain an "Approved Broker List" of brokers to sell annuities
for structured settlements.  Those on the list are known as
"Agency Partners" who have allegedly engaged in parallel
conduct, namely concealing the fact that their broker's fees are

-12-

bundled into the represented annuity costs in an effort to push the sale of AIG annuities.

Those allegations do not, however, rise to the level of an association-in-fact enterprise because the complaint does not state how the brokers collaborated with each other or if the brokers were even aware of each other's participation in the alleged scheme. Gov't Emps. Ins. Co. v. Analgesic Healthcare, Inc., No. 16-11970, 2017 WL 1164496, at *2 (D. Mass. Mar. 28, 2017) (holding that parallel conduct among healthcare providers did not support an inference that they "coordinated or collaborated") (citing Boyle, 556 U.S. at 946).  Although plaintiffs adequately allege agreements between each broker and insurer, they fail to plead facts suggesting collaboration or the "unifying rim" on the "hub-and-spoke" structure of an enterprise. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 374 (3d Cir. 2010) (affirming the dismissal of inadequate allegations of RICO associations-in-fact).

The First Circuit has held that the

> similarity of goals and methods does not suffice to show that an enterprise exists; what is necessary is evidence of systematic linkage . . . or continuing coordination.

Libertad v. Welch, 53 F.3d 428, 443 (1st Cir. 1995).  This court has rejected claims that similarly disparate groups, whose alleged participants did not have knowledge of each other's existence or participation, formed a RICO association-in-fact.

-13-

See, e.g., Gov't Emps. Ins Co., 2017 WL 1164496, at *3; In re
Lupron Mktg. & Sales Pratices Litig., 295 F. Supp. 2d 148, 173-
74 (D. Mass. 2003) (considering a network of prescribing
physicians).  The complaint does not adequately allege
cooperation, collaboration or interdependence sufficient to
state a civil RICO claim.

Accordingly, Count I of the Complaint will be dismissed
without prejudice.

### 4. Fraudulent Misrepresentations

Plaintiffs allege that defendants made false and misleading
representations concerning the value of the payments agreed to
in the settlement agreement.  They contend that defendants
assumed an affirmative duty to disclose and that by concealing
the true cost of the annuities, defendants violated that duty.
In their complaint, plaintiffs further allege that they relied
upon defendants' misrepresentations to their detriment and
financial injury.

Defendants rejoin that the allegations in the complaint
fail to satisfy the pleading requirements under Fed. R. Civ. P.
9(b).  Furthermore, they deny that they were under any duty to
disclose the pricing and premium information.  Defendants
suggest that, while Lexington entered into the settlement
agreements with plaintiffs, other defendants (and in the case of
Biddings's settlement, non-parties) from whom Lexington bought

-14-

the annuities were the entities that actually paid the broker commissions.  Defendants also suggest that because the commissions were in line with the industry standard, plaintiffs cannot allege that the commission would have been material to the decision to settle and plaintiffs have failed to plead sufficient reliance.

Plaintiffs counter that they have pled fraudulent misrepresentations, specifically as to the amount that would be annuitized.  They contend that defendants owed a duty to disclose that defendants were deducting 4% of the settlement to pay a commission because of contrary affirmative statements that the full settlement amount would be annuitized.

Under Fed. R. Civ. P. 9(b), when alleging fraud or mistake a plaintiff must state "with particularity the circumstances constituting fraud or mistake".  To meet those requirements, a plaintiff

> must specify the time, place, and content of an alleged
> false representation sufficiently to put defendants on
> notice and enable them to prepare meaningful responses.

OrbusNeich Med. Co. v. Boston Sci. Corp., 694 F. Supp. 2d 106, 118 (D. Mass. 2010).  That standard is satisfied where a plaintiff avers with particularity the "who, what, where and when of the allegedly false or fraudulent representation" but other elements, such as intent and knowledge, may be pled in

general terms. <u>Rodi</u> v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004).

With respect to the affirmative misrepresentations alleged in this case, the complaint does not meet the requirements of Rule 9(b) because it does not identify who made the statements with particularity. Each named plaintiff alleges that

> AIG, directly and through AIG Domestic Claims, on behalf of AIG's Lexington Insurance Company and other representatives of AIG, made a false representation as a statement of fact to [the named plaintiff] through [his or her] attorney, orally and in writing, that [he or she] would receive periodic payments costing [an amount certain] in settlement of [his or her] claims.

Complaint ¶¶ 46, 52, 59. Although plaintiffs sufficiently allege that a misrepresentation was made, namely that a certain amount would be annuitized, they do not make clear which defendant made such a misrepresentation. <u>See</u> <u>e.g.</u>, <u>West Coast Roofing & Waterproofing, Inc.</u> v. <u>Johns Manville, Inc.</u>, No. 06-118, 2006 WL 3837366, at *4 (M.D. Fla. Dec. 29, 2006) (finding that the Rule 9(b) requirements were not satisfied because there was "no indication which defendant made which representations").

Plaintiffs' duty to disclose theory also falls short by virtue of the complaint's grouping of the defendants. Under Mississippi and Florida law, a party is required to disclose a fact if failure to speak would render prior statements misleading. <u>See</u> <u>e.g.</u>, <u>Holman</u> v. <u>Howard Wilson Chrysler Jeep, Inc.</u>, 972 So.2d 564, 568 (Miss. 2008) ("The duty to disclose is

-16-

based upon a theory of fraud that recognizes that the failure of a party to a business transaction to speak may amount to the suppression of a material fact which should have been disclosed and is, in effect, fraud."); SEC v. City of Miami, 988 F. Supp. 2d 1343, 1356 (S.D. Fla. 2013).

Although it is not entirely clear from the face of the complaint or the opposition memorandum, plaintiffs presumably impute this duty to Lexington, the defendant with whom they entered into settlement agreements. Plaintiffs' complaint concedes, however, that the commissions were paid by the annuity issuers and not by Lexington. They have not adequately alleged that Lexington, the party that would be subject to the duty, knew about the commissions or had any role in paying the commissions. Nor do plaintiffs cite a single authority that would suggest that Lexington, as the settling party, had the affirmative duty to disclose the commission paid by a third party (and in the case of Biddings's settlement, a non-party) insurance company. Instead, plaintiffs continue to refer collectively to "AIG" and "defendants" and do not specify which party made representations or owed a duty to disclose.

Accordingly, defendants' motion to dismiss Count II will be allowed and Count II will be dismissed without prejudice.

### 5. Unjust Enrichment

Plaintiffs allege that AIG Parent was benefited by its uniform policy and practice of deception and that it unjustly failed to reimburse plaintiffs for those benefits.  AIG Parent retorts that 1) plaintiffs have not pled their unjust enrichment claim with particularity, 2) that claim is barred by the existence of an express contract governing the subject matter and 3) it is unavailable because an adequate legal remedy exists.

Plaintiffs systematically reply that 1) they are not required to allege a benefit with particularity, 2) because AIG Parent was not a party to the contract, the existence of the contract does not bar their unjust enrichment claim and 3) the existence of adequate legal remedies similarly does not bar the claim.

To state a claim for unjust enrichment under Florida law, a plaintiff must allege that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of that benefit and accepted that benefit and (3) it would be inequitable under the circumstances for the defendant to retain the benefit. Merle Wood & Assos., Inc. v. Trinity Yachts, LLC, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing Commerce P'ship v. Equity Contracting Co., 695 So.2d 383, 386) (Fla. Dist. Ct. App. 1997)).  Under Mississippi law, the doctrine of unjust

enrichment applies to situations where there is no legal

contract

> but where the person sought to be charged is in possession
> of money or property which in good conscience and justice
> he should not retain but should deliver to another.

In re Auto. Parts Antitrust Litig., No. 12-md-02311, 2014 WL

2999269, at *33 (E.D. Mich. 2014) (applying Mississippi law)

(citing Omnibank of Mantee v. United S. Bank, 607 So.2d 76, 92

(Miss. 1992).

Where the unjust enrichment claim sounds in fraud, it must

meet the heightened pleading standards set forth in Fed. R. Civ.

P. 9(b). Allstate Indem. Co. v. Fla. Rehab & Injury Ctrs.

Longwood, Inc., No. 15-cv-1740, 2016 WL 7177624, at *3 (M.D.

Fla. July 26, 2016) (citing United States ex rel. Citizens

United to Reduce & Block Fed. Fraud, Inc. v. Metro. Med. Ctr.,

Inc., No 89-0592, 1990 WL 10519617, at *3 (S.D. Fla. Jan. 11,

1990)).

In its opposition memorandum, plaintiffs state explicitly

that their unjust enrichment claim is "based on fraud".  The

only allegation in the complaint against AIG Parent is a

conclusory statement that AIG Parent

> was benefited by its uniform policy, pattern, and practice
> of deception and unjustly failed to pay the Plaintiffs or
> the members of the proposed class for those benefits.

Plaintiffs' conclusory allegation that AIG Parent was benefited

by its policy of deception is insufficient to meet the

heightened pleading standards under Rule 9. <u>Allstate Indem. Co.</u>,
2016 WL 7177624, at *4.  Plaintiffs bring the unjust enrichment
claim against only defendant AIG Parent but they fail to allege
specific facts as to AIG Parent's role in the scheme to deceive
the plaintiffs.  Instead, they lump defendants together into one
corporate conglomeration called "AIG" and make only a conclusory
allegation devoid of factual support. <u>Id.</u>

Accordingly, Count III of the complaint will be dismissed
without prejudice.

### 6. AIG Assurance Company, AIG Specialty Insurance Company and NUFIC

In a footnote of their memorandum, defendants contend that
plaintiffs have failed to allege any facts against three named
defendants, AIG Assurance Company, AIG Specialty Insurance
Company and NUFIC.  They submit that because plaintiffs have
failed to allege a specific action taken by any of those three
defendants, the Court is required to dismiss them.  Plaintiffs
fail to respond to that assertion in their opposition
memorandum.  Although Counts I and II are subject to dismissal
on other grounds, that dismissal will be without prejudice and
thus the Court addresses here the lack of any specific
allegations against the three subject defendants.

The substance of a plaintiff's complaint "must give the
defendants notice of the nature of the claim against them."

-20-

Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 91 (1st Cir. 2014)
(citing Cortés-Rivera v. Department of Corrections &
Rehabilitation, 626 F.3d 21, 28-29 (1st Cir. 2010)).  Where a
plaintiff's complaint omits any reference to a specific
defendant and alleges no facts against that defendant, no such
notice is provided.  Accordingly, a district court will dismiss
causes of action for failure to state a claim as to unmentioned
corporate defendants. See, e.g., Keane v. Navarro, 345 F. Supp.
2d 9, 12 (D. Mass. 2004).

      Plaintiffs fail to make any allegations against AIG
Assurance Company, AIG Specialty Insurance Company or NUFIC.
Beyond naming those three defendants in the case caption and
stating their places of business in their description of the
parties, plaintiffs do not include them in the substance of the
complaint.  Counts I and II, which are brought against all
defendants, will be dismissed against the corporate defendants
who are not mentioned in the substance of the complaint.

### 7. Dismissal Without Prejudice

      In their opposition memorandum, plaintiffs request leave to
file an amended complaint should this Court allow defendants'
motion to dismiss in whole or in part.

      Under Fed. R. Civ. P. 15(a)(2), the court may permit a
party leave to amend its pleadings and "should freely give leave

when justice so requires".  Leave should be granted unless there is a good reason to deny it, such as

> undue delay, bad faith, dilatory motive on the part of the
> movant [or] futility of the amendment.

Grant v. News Grp. Boston, Inc., 55 F.3d 1 (1st Cir. 1995).
Plaintiffs' request to amend does not appear to be futile.  It has been made early in the proceedings and there is nothing to suggest the request is made in bad faith or to slow the progress of the case. See Mass. Inst. Of Tech. v. Shire, PLC, No. 13-cv-10020, 2014 WL 404696 (D. Mass. Feb. 2, 2014).  Accordingly, the Court will dismiss the complaint without prejudice and allow plaintiffs an opportunity to amend once.  If the first amended complaint is deficient, dismissal will then be with prejudice.
See Montini v. Lawler, Nos. 12-11296-DJC, 12-11399-DJC, 2014 WL 1271696, at *12 n.7 (denying leave to amend after the plaintiff had already been afforded leave to file one amended complaint).

## ORDER

For the foregoing reasons, defendants' motion to dismiss (Docket No. 21) is **ALLOWED** and the complaint is dismissed in its entirety without prejudice.  A first amended complaint shall be filed, if at all, on or before January 9, 2018.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated December 20, 2017