**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **NORMA EZELL, LEONARD WHITLEY, and ERICA BIDDINGS, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**LEXINGTON INSURANCE COMPANY; AMERICAN INTERNATIONAL GROUP, INC.; AIG ASSURANCE COMPANY; AIG INSURANCE COMPANY; AIG PROPERTY CASUALTY COMPANY; AIG SPECIALTY INSURANCE COMPANY; AMERICAN GENERAL LIFE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, P.A.; AGC LIFE INSURANCE COMPANY; AMERICAN GENERAL ANNUITY SERVICE CORPORATION; and AIG DOMESTIC CLAIMS, INC.,**<br><br>**Defendants.** | **Civil Action No. 17-10007-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Norma Ezell (“Ezell”), Leonard M. Whitley, Jr. (“Whitley”) and Erica Biddings (“Biddings”) (collectively “plaintiffs”) bring this putative class action against ten insurance companies and subsidiaries (collectively “defendants”) alleging that certain commissions charged in connection with annuity payments are unlawful. Pending before this Court is defendants’ motion to dismiss plaintiffs’ amended complaint.

For the reasons that follow, the motion to dismiss will be allowed with respect to both the civil RICO claim and fraudulent misrepresentation claim.

## I. Background

Plaintiffs' putative class action arises from a number of structured settlements of personal injury, wrongful death and workers' compensation claims against non-parties insured by Lexington Insurance Company ("Lexington"). The structured settlements provided that the claimants would receive a portion of their settlement payments over time according to a fixed schedule (rather than in a lump sum). The structured settlement portions of those settlements were ultimately funded through the purchase of annuities from a separate life insurance company. Plaintiffs allege that defendants fraudulently deducted 4% from the cash portion of the settlement 100% of which the settling parties had agreed would fund the annuity payments.

### A. The Parties

#### 1. Named Plaintiffs

The putative class action is brought by three named plaintiffs, Norma Ezell, Leonard Whitley and Erica Biddings on behalf of themselves and similarly situated settling parties.

Plaintiffs Norma Ezell ("Ezell") and Leonard M. Whitley, Jr. ("Whitley") are both residents of Aberdeen, Mississippi. Ezell and Whitley entered into a settlement agreement in April,

2003, with Community Eldercare Services and CLC of West Point, LLC, to resolve wrongful death claims arising from the death of their aunt, Odessa Ware. Lexington was the insurer of the nursing home. Ezell and Whitely each brought claims individually and in their capacities as Administratrix of and heirs to the estate of their aunt.

Plaintiff Erica Biddings ("Biddings") resides in Southwest Ranches, Florida. In August, 2009, Biddings settled wrongful death and personal injury claims brought individually and as a personal representative of the estate of her husband, Roddy Major, against Bull Motors LLC, doing business as Maroone Ford. Lexington was the liability insurer of Maroone Ford and was obligated to pay any claim made or judgment obtained against it covered by its policy with Bull Motors.

**2. Defendants**

Plaintiffs name eleven affiliated insurance companies in their amended complaint: (1) Lexington, (2) American International Group, Inc. ("AIG Parent"), (3) AIG Assurance Company, (4) AIG Insurance Company, (5) AIG Property Casualty Company, (6) AIG Specialty Insurance Company, (7) American General Life Insurance Company ("AGL"), (8) National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC"), (9) AGC Life Insurance Company, (10) American General Annuity Service Corporation ("AGASC") and (11) AIG Domestic Claims, Inc.

In their amended complaint, plaintiffs state that nine defendants are subsidiaries of AIG Parent. Throughout their amended complaint, plaintiffs refer to defendants collectively as "AIG" and refer to AIG Parent as the umbrella company for all its subsidiaries. Defendants clarify that Lexington, AIG Assurance Company, AIG Property Casualty Company, AIG Specialty Insurance Company and AGASC are AIG's property and casualty ("P&C") insurance companies. Defendants contend that the complaint does not allege that any of AIG's P&C companies, other than Lexington, had any interaction with the defendants. Defendants note that AGL, AGC Life Insurance Company and AGASC are AIG's life insurance companies.

**B. Settlements**

Ezell and Whitley settled claims against Community Eldercare Services and CLC of West Point, which were insured by Lexington, in April, 2003. The terms of their settlement included a lump sum payment of $700,000 and a payment of $200,000 to be annuitized to provide periodic payments beginning in June, 2003. According to the amended complaint, Ezell and Whitley were advised by Tom Senderhauf, a representative of AIG, that a part of that settlement would be paid in the form of an annuity. Under that payment structure, Ezell and Whitley were each allocated one half of the $200,000, or $100,000. The annuity to fund future payments was issued by AGL.

Ezell and Whitely allege they were unaware that the annuity portion of the settlement, $200,000, was subject to the payment of a commission by defendants to someone working on defendants' behalf to settle the claim. Plaintiffs contend that Senderhauf represented to them that they would receive the full $100,000 and that defendants did not inform them that 4% of the annuity premium would be paid to an AIG-Approved Broker, Jim Beatty.

Biddings entered into a settlement agreement in August, 2009, resolving wrongful death and personal injury claims against Bull Motors LLC which was insured by Lexington. Consistent with the settlement of Ezell and Whitley, Biddings's settlement agreement provided for a cash payment and a series of periodic payments with a "present value" of $1,642,000. Lexington funded three separate annuities issued by three life insurance companies which were not affiliated with defendants and are not parties to this action: Allstate Life Insurance Company, Hartford Life Insurance Company and New York Life Insurance Company.

Biddings alleges that she was unaware that 4% of the $1,642,000 annuity premium would be paid to AIG-Approved Broker Douglas Smith. The complaint states that Biddings did not know that the amount to be annuitized included a commission to be paid to someone working on behalf of defendants to settle the

claims brought against Lexington in its capacity as liability insurer of Bull Motors.

**C. Procedural History**

Plaintiffs commenced this action in January, 2017, and in March, 2017, defendants jointly moved to dismiss the complaint in its entirety. In an order entered on December 20, 2017, this Court allowed defendants' motion to dismiss the original complaint in its entirety without prejudice. This Court held that plaintiffs failed to state a civil RICO claim because they did not plead adequately that defendants and non-party brokers associated together for a common illegal purpose to establish the required association-in-fact enterprise. The Court further held that plaintiffs failed to state a claim of fraudulent misrepresentation because they did not specifically allege which defendant made the fraudulent misrepresentation pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. The Court afforded plaintiffs leave to file an amended complaint.

Plaintiffs filed an amended complaint in January, 2018, reasserting their earlier RICO and fraudulent misrepresentation claims. Shortly thereafter, defendants jointly moved to dismiss the amended complaint in its entirety.

**D. Additional Facts Pled in Amended Complaint**

In response to this Court's previous order allowing defendants' motion to dismiss, plaintiffs make several new

allegations in support of their civil RICO and fraudulent misrepresentation claims. With respect to their civil RICO claim, plaintiffs assert that the AIG-Approved Brokers were publicly known at all times and that each of the brokers was aware of the others. Plaintiffs base that allegation on two different webpages located on the websites of AGL and AIG.

Furthermore, plaintiffs refer to two emails dated March 5, 2004, and December 3, 2008, which they claim indicate that the AIG-Approved Brokers not only knew of each other's existence but also collaborated in a scheme to defraud structured settlement claimants. The March 5, 2004, email, sent by an AIG employee to AIG-Approved Brokers, states that AIG-Approved Brokers should "continue to act as a team" to meet that year's goals for structured settlement premiums by following AIG's recommended quoting procedure. The December 3, 2008, email was sent by the Global Head of Structured Settlements at AIG to AIG-Approved Brokers and stated that there had been a decline in compliance with AIG's quoting procedure and that the brokers' "role as [] AIG approved consultant[s] requires [them] to comply with this process". Those new allegations are likely in response to the Court's determination that the original complaint

> does not state how the brokers collaborated with each other or if the brokers were even aware of each other's participation in the alleged scheme.

Ezell v. Lexington Ins. Co., 286 F. Supp. 3d 292, 298 (D. Mass. 2017)

With respect to their fraudulent misrepresentation claim, plaintiffs allege that Lexington was aware of the 4% commission charged by the AIG-Approved Brokers from the funding of previous structured settlements. That new allegation is apparently in response to the Court's determination that plaintiffs had

> not adequately alleged that Lexington, the party that would be subject to the duty [to disclose], knew about the commission or had any role in paying the commissions.

Id. at 300.

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v.

Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**B. Application**

**1. Civil RICO**

Count I of both plaintiffs' original complaint and the amended complaint alleges that defendants, together with the brokers participating in AIG's "Approved Broker" program, formed an association-in-fact for the purpose of conducting structured settlement transactions. Plaintiffs contend that defendants engaged in more than two acts of mail and wire fraud which serve as predicate offenses under the RICO statute. They assert that defendants knowingly and intentionally participated in misrepresenting the present value of the settlement or the cost of the annuities by concealing the 4% commission.

Defendants respond that plaintiffs have failed to plead sufficient additional facts to cure the deficiencies of their initial complaint. They argue that plaintiffs have alleged neither an adequate RICO enterprise, distinct from the defendants, established for a common purpose nor predicate acts with particularity.

To state a RICO claim under 18 U.S.C. § 1961, a plaintiff must allege four elements: "(1) conduct, (2) of an enterprise,

(3) through a pattern, (4) of racketeering activity". Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005) (internal citations omitted). Section 1961(1) defines racketeering activity to mean "any act that violates one of the federal laws specified in the RICO statute", including the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, over a ten-year period. Id. The Supreme Court has made clear that

> an enterprise includes any union or group of individuals associated in fact and that RICO reaches a group of persons associated together for a common purpose of engaging in a course of conduct.

Boyle v. United States, 556 U.S. 938, 944-45 (2009) (internal quotations omitted) (citing United States v. Turkette, 452 U.S. 576, 580, 583 (1981)).

The plaintiffs have again failed to plead adequately that the defendants and non-party brokers associated together for a common illegal purpose as opposed to merely conducting their business in parallel. Id. at 946. The original and amended complaints both allege that defendants maintain an "Approved Broker List" of brokers to sell annuities for structured settlements. Those on the list are known as "Agency Partners" who have allegedly engaged in parallel conduct, namely concealing the fact that their broker's fees are bundled into the represented annuity costs in an effort to push the sale of AIG annuities.

In this Court's prior order allowing defendants' motion to dismiss, it found that those allegations, alone, do not rise to the level of an association-in-fact enterprise because

> the complaint does not state how the brokers collaborated with each other or if the brokers were even aware of each other's participation in the alleged scheme.

Ezell v. Lexington Ins. Co., 286 F. Supp. 3d 292, 298 (D. Mass. 2017).

While the newly-cited emails dated March 5, 2004, and December 3, 2008, indicate that the brokers may have been aware of each other, they do not indicate how the brokers collaborated with each other with respect to the alleged fraudulent scheme. Neither email mentions the 4% broker's commission nor indicates that the brokers collaborated with each other as part of a larger scheme to deduct broker's fees from the annuity costs secretly. Where the complaint makes no allegation that the alleged RICO participants associated together with a common fraudulent purpose but only alleges that each was aware that there were likely others engaging in parallel practices, the complaint fails to establish an association-in-fact enterprise. In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d 172, 184 (D. Mass. 2003). Although plaintiffs' amended complaint may purport to show that the AIG-Approved Brokers have similar goals and methods, it "does not suffice to show that an

enterprise exists”. Libertad v. Welch, 53 F.3d 428, 443 (1st Cir. 1995).

Because plaintiffs have not remedied the deficiencies of the original complaint with respect to the civil RICO claim, Count I of the amended complaint will be dismissed with prejudice against all defendants.[1]

**2. Fraudulent Misrepresentations**

Plaintiffs allege that defendants made false and misleading representations concerning the value of the payments agreed to in the structured settlement agreements. They contend that defendants assumed an affirmative duty to disclose the broker’s fees and that by concealing the true cost of the annuities, defendants violated that duty. In their complaint, plaintiffs further allege that they relied upon defendants’ misrepresentations to their detriment and financial injury.

Defendants rejoin that the allegations in the complaint fail to satisfy the pleading requirements under Fed. R. Civ. P. 9(b). Furthermore, they deny that they were under any duty to disclose the pricing and premium information. Defendants suggest that, while Lexington entered into the settlement agreements with plaintiffs, other defendants (and in the case of

[1] If the amended complaint is deficient, dismissal will be with prejudice. See Montini v. Lawler, Nos. 12-11296-DJC, 12-11399-DJC, 2014 WL 1271696, at *12 n.7 (denying leave to amend after the plaintiff had already been afforded leave to file one amended complaint).

Biddings's settlement, non-parties) from whom Lexington bought the annuities were the entities that actually paid the broker commissions. Defendants also explain that because the commissions were in line with the industry standard, plaintiffs cannot allege that the commission would have been material to the decision to settle and plaintiffs have failed adequately to plead sufficient reliance.

Plaintiffs counter that rejoinder with the argument that they have pled fraudulent misrepresentations, specifically as to the amount that would be annuitized. They assert that defendants owed a duty to disclose that defendants intended to deduct 4% of the settlement to pay a commission because of contrary prior statements that the full settlement amount would be annuitized.

Under Fed. R. Civ. P. 9(b), when alleging fraud or mistake a plaintiff must state "with particularity the circumstances constituting fraud or mistake". To meet those requirements, a plaintiff

> must specify the time, place, and content of an alleged false representation sufficiently to put defendants on notice and enable them to prepare meaningful responses.

OrbusNeich Med. Co. v. Boston Sci. Corp., 694 F. Supp. 2d 106, 118 (D. Mass. 2010). That standard is satisfied when a plaintiff avers with particularity the "who, what, where and when of the allegedly false or fraudulent representation" but

other elements, such as intent and knowledge may be pled in general terms. Rodi v. S. New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004). In addition, “where there are multiple defendants, the specific role of each must be alleged.” Presti v. Toyota Motor Sales U.S.A., Inc., No. 17-10320, 2018 WL 792035 (D. Mass. Feb. 8, 2018) (quoting Rick v. Profit Mgmt. Assocs., Inc., 241 F. Supp. 3d 215, 224 (D. Mass. 2017)).

In the previous order allowing defendant’s motion to dismiss, this Court held that plaintiffs failed to satisfy the pleading requirements of Rule 9(b). It concluded that, although plaintiffs sufficiently alleged that a misrepresentation was made, they failed to plead adequately which defendant made such a misrepresentation. Ezell, 286 F. Supp. 3d at 300. In particular, this Court stated that plaintiffs did not adequately allege that Lexington knew about or had any role in paying the commissions or cite any authority suggesting that Lexington, as the settling party, had the affirmative duty to disclose the commission paid by a third party. Rather, it found that plaintiffs referred to the parties collectively as “AIG” or “defendants” without specifying who made the representations.

Plaintiffs attempted to cure the noted deficiencies by alleging that Lexington knew that a broker’s fee would be paid out of plaintiffs’ annuities because that was its standard procedure for funding structured settlements and thus Lexington

had a duty to disclose those commissions. Furthermore, they allege that Tom Senderhauf, an employee of AIG, acted on behalf of Lexington during the structured settlement negotiations but they did not specify that he was an employee of AIG Parent. Plaintiffs allege that Senderhauf showed two of the plaintiffs, Ezell and Whitley, annuity illustrations based on a purported cost of $200,000 and represented to them that they would receive periodic payments totaling just over $100,000 after all expenses. That is the alleged misrepresentation made on behalf of AIG and Lexington as an AIG-subsidiary.

Elsewhere in the amended complaint, however, plaintiffs indicate that AIG, directly and through AIG Domestic Claims, acted on behalf of Lexington. That is the same allegation made in the original complaint previously found to be insufficient. Moreover, plaintiffs state in their amended complaint that “AIG” refers collectively to AIG and all of its subsidiaries and that “AIG Parent” refers solely to American International Group, Inc. It remains unclear, therefore, whether plaintiffs assert that Senderhauf was an employee of AIG Parent, AIG Domestic Claims, Lexington or some other AIG subsidiary when he made the alleged misrepresentation to plaintiffs Ezell and Whitley. By continuing to engage in vague pleading, plaintiffs Ezell and Whitley have failed to identify which defendant made the alleged misrepresentation and thus have not remedied the deficiencies of

the original complaint. Their claims for fraudulent misrepresentation will therefore be dismissed.

With respect to plaintiff Biddings, the plaintiffs make no additional allegations that a representative of Lexington made the alleged fraudulent misrepresentation. Plaintiffs assert that an authorized representative of Lexington signed the settlement agreement with Biddings on August 13, 2009. That is, however, the identical allegation made in plaintiffs' original complaint previously found to be insufficient. Without identification of who from Lexington made the alleged misrepresentation, Bidding's claim for fraudulent misrepresentation will be dismissed.

Even if plaintiffs had adequately alleged the author of the fraudulent misrepresentations, they have failed to allege how those misrepresentations were material. To show materiality, plaintiffs must demonstrate that the matter misrepresented was relevant and important in determining their choice of action. See Saturn Telecomm. Servs. Inc. v. BellSouth Telecomm., Inc., No. 4-08-cv-271, 2008 WL 11337385, at *7 (N.D. Fla. Nov. 25, 2008) (including "substantial change of position" as element of fraudulent inducement); Restatement (Second) of Torts § 538 (Am. Law. Inst. 1977) ("The matter is material if (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question;

or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.”).

Plaintiffs fail to allege how their decisions would have been affected had they known of the 4% broker’s commission. They concede that charging such a fee was an industry-wide practice for annuities and they do not claim that they would have declined the structured settlement had they known of the broker’s fee. To the contrary, they assert that, had they known of the broker’s fee, they would have employed their own brokers who would have acted in their interests rather than the interests of defendants. That claim, however, addresses only the separate issue of who hired the brokers, not the issue of saving the 4% broker’s fee. Had plaintiffs hired their own brokers, presumably they would have still paid the industry-standard 4% commission to enter into the structured settlement agreements. Without alleging specifically how foreknowledge of the broker’s fee would have affected their choice of taking the structured settlement, plaintiffs have failed to plead the “materiality” prong of common-law fraud.

For that further reason, defendants’ motion to dismiss Count II will be allowed and Count II will be dismissed with prejudice.

## ORDER

For the foregoing reasons, defendants' motion to dismiss (Docket No. 51) is **ALLOWED** and the amended complaint is **DISMISSED** with prejudice.

**So ordered.**

/s/ Nathaniel M. Gorton______
Nathaniel M. Gorton
United States District Judge

Dated September 27, 2018